UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
………………………………………………………………………….………x
HEATHER MITCHELL,

                                                      Docket No.

              Plaintiff,

    -against-

                                                **COMPLAINT**

CITYSCAPE OB/GYN PLLC,                  **JURY TRIAL REQUESTED**

              Defendant(s).

…………………………………………………………………………………

      Plaintiff Heather Mitchell, by her attorney, Albert Van-Lare, Esq., complaining of the Defendant, states as follows:

## PRELIMINARY STATEMENT

      This case arises out of the breach of contract by Defendant, Cityscape OB/GYN PLLC. Defendant breached the employment contract it entered into with Plaintiff, Heather Mitchell, a nurse practitioner, when in bad faith it terminated her employment eight days after entering into the employment agreement with her.  Defendant justified the termination of the contract by unreasonably accusing Plaintiff of failing to produce proof of prior malpractice insurance from her previous employer that specifically identified Plaintiff as a covered person under the malpractice policy of the previous employer, a large health care facility.  She produced evidence that she was covered as part of the employer's group coverage but she was unreasonably and improperly terminated despite her compliance.

## JURISDICTION AND VENUE

Jurisdiction is vested in this court pursuant to 28 USC Section 1332(a) as Plaintiff resides in New Jersey and the Defendant is a New York corporation doing business the State of New York. The amount in controversy exceeds $75,000.00.

Venue is proper in this district pursuant to 28 USC Section 1391.

## FACTUAL ALLEGATIONS

1. Heather Mitchell (Plaintiff) is a resident of the State of New Jersey

2. Plaintiff was employed by the Defendants during the relevant period of this complaint.

3. Defendant's office is located in New York City.

4. Plaintiff is charging Defendant with breach of employment contract.

5. Plaintiff entered into an employment contract with Defendant on August 18, 2014.

*The contract between the parties, include the following paragraphs and terms , amongst others:* *Term:* *The term of this Agreement shall be for a period of about two years commencing on the Effective Date and terminating on August 24, 2016, and shall be automatically renewed and extended thereafter for one (1) year terms unless either party gives notice not to renew at least one hundred twenty (120) days prior to the expiration of the term. Without contravening the foregoing, no later than one hundred twenty (120) days prior to the expiration of the term, the PLLC and the Nurse Practitioner shall discuss the extension of the nurse's employment and the terms and conditions, including compensation, thereof.*

3. *Compensation:*

*(a) During the term of the Nurse Practitioner's employment hereunder, the PLLC agrees to pay Nurse Practitioner annual base salary of One Hundred Ten Thousand Dollars ($110,000.00).*

*(b) Compensation paid to the Nurse Practitioner hereunder shall be subject to all applicable withholding taxes and deductions.  The Nurse Practitioner's Compensation hereunder shall be payable in equal installments in accordance with the general practice of the PLLC (but not less than semi-monthly) for professional employees.  Bonus compensation shall be paid annually, in arrears, once the Bonus Threshold is met.*

4. *Services:*

*(a)     The Nurse Practitioner agrees to serve the PLLC faithfully and to the best of her ability, providing such professional services as are required by the PLLC from time to time.  The Nurse Practitioner shall provide services to the PLLC on a full-time basis in the specialty of obstetrics and gynecology during such days and hours and at such locations as the PLLC may schedule from time to time.*

*(b)     The Nurse Practitioner shall devote her full-time attention and energies to the business of the PLLC according to the schedules determined by the PLLC.  During the days and hours (which shall be no less than 40 hours per week in the office (with one day of evening hours until 7:00 p.m.) that she provides services to the PLLC without limitation: (i) the Nurse Practitioner's duties hereunder shall include those set forth on <u>Exhibit A</u> annexed hereto, and (ii) the Nurse Practitioner shall provide "call" services on nights, weekends and holidays as scheduled by the PLLC from time to time if necessary.*

*(c)     The Nurse Practitioner shall not, without the prior written consent of the PLLC (which shall not be unreasonably withheld), engage in any other professional activity or any other business activity, which business activity interferes with Nurse Practitioner's obligations hereunder (in either case, other than as a passive investor), whether or not such business or professional activity is pursued for gain, profit or other pecuniary advantage.*

*(d)     The Nurse Practitioner shall perform the services required of her under this Agreement at the offices of the PLLC, other offices where the PLLC provides services in the borough of Manhattan.*

*<u>Vacation and Fringe Benefits:</u>*

*(a)     The Nurse Practitioner shall be entitled to: three (3) weeks of paid vacation, sick leave and personal days during each contract year hereunder (or, the pro-rata portion thereof for any part of any such contract year).  In addition to the foregoing, the Nurse Practitioner shall be entitled to one (1) week of paid leave per contract year, or the pro-rata portion thereof for any part of a contract year, for purposes of attendance at CME conferences.  An educational allowance of up to Fifteen Hundred Dollars ($1,000.00) per year for CME-related expenses, journals and other such educational items. No vacation or leave may be taken during the first three (3) months of employment or following notice of termination.  All such vacation and leave shall be taken in accordance with the policies adopted by the PLLC for professional employees and shall be taken at such times as are approved in writing at least thirty (30) days in advance by the PLLC, provided that the PLLC shall be reasonable in meeting the Nurse Practitioner's requests for vacation.  Any unused vacation and leave time may not be carried over for use in succeeding contract years nor shall the Nurse Practitioner be entitled to payment for same.*

*10.     <u>Termination:</u>*

*(a)     This Agreement may, at the option of the PLLC, be terminated for cause upon the happening of any of the following events:*

(i) if the Nurse Practitioner shall become legally disqualified to practice medicine in the State of New York or otherwise is unable to dispense prescription drugs and controlled substances;

(ii) if the Nurse Practitioner does not obtain board certified in obstetrics and gynecology; within 2 years of effective date and if Nurse Practitioner does maintain board certification after achieved;

(iii) if Nurse Practitioner is convicted of a Class A misdemeanor or of a felony;

(iv) if Nurse Practitioner is excluded as a provider from any major health insurance plans in which the PLLC participates;

(v) if Nurse Practitioner is systematically inattentive to, or neglectful of, the duties to be performed by her hereunder;

(vi) if the Nurse Practitioner dies;

(vii) if the Nurse Practitioner becomes "disabled." As used herein, the Nurse Practitioner shall be deemed disabled should she be unable to provide the customary services required of her hereunder on account of illness, disease or injury for a period of sixty (60) days during any one hundred eighty (180) day period. Nurse Practitioner is required to use any vacation or CME time during disability period. If the disability of the Nurse Practitioner is disputed, it shall be resolved by two (2) physicians, one (1) appointed by the Nurse Practitioner and one (1) appointed by the PLLC. If the two (2) physicians so selected cannot agree as to whether or not the Nurse Practitioner is permanently disabled, the two (2) physicians so selected shall designate a third physician and a majority of the three (3) physicians so selected shall determine whether or not the Nurse Practitioner is disabled. Notwithstanding the foregoing, the Nurse Practitioner shall be conclusively deemed disabled in the event any disability insurance benefits are paid to her throughout the sixty (60) day period referred to in this clause (vii);

(viii) if, in the discretion of the PLLC, the Nurse Practitioner engages in personal misconduct of such a material nature as to render her presence as an employee professionally detrimental to the PLLC, its patients, or to the other employees thereof; or

(ix) if the Nurse Practitioner fails to use her best efforts to diligently assure that the PLLC's office and medical practice remains at all times in compliance with all federal, state and local laws and regulations, and in compliance with the licensing and/or accreditation criteria of any organization which has inspected and either licensed or accredited said office (provided that, in order to terminate the Nurse Practitioner under the provisions of this clause (x), the PLLC must have diligently utilized its best efforts to assure material compliance of its office and medical practice with all applicable laws, regulations and accreditation standards);

(x) if the Nurse Practitioner fails to maintain the medical malpractice policy required hereunder without surcharge;

(xi) if Nurse Practitioner fails to become credentialed by or is removed from a provider panel of any health maintenance organization, managed care organization, indemnity insurer, third party payer, independent practice association or other provider network with which the PLLC or the Nurse Practitioner has a contract;

      (xiii) if the Nurse Practitioner breaches any of the provisions of Section 12 hereof;

      (xiv) if the Nurse Practitioner engages in any incompetent, disloyal, dishonest or illegal conduct which has a negative economic impact on the PLLC;

      (xv) if substantial damage occurs to the facility where the PLLC provides services such that such facility cannot be repaired or replaced within ninety (90) days of such damage;

      (xvi) if the Nurse Practitioner breaches any other term of this Agreement which is not cured within ten (10) days after the provision of notice of such breach by the PLLC.

  (b) *This Agreement may be terminated at the option of the Nurse Practitioner should the PLLC materially breach any of its obligations under this Agreement and such breach continues for ten (10) days following the PLLC's receipt of written notice of such breach.*

  (c) *This Agreement shall be terminated whenever the PLLC and the Nurse Practitioner mutually agree to termination in writing.*

  (d) *This Agreement may be terminated by either party, upon delivery of Ninety (90) days prior written notice to the other party, of its desire to terminate this Agreement, with or without cause.*

  (e) *Upon the termination, expiration or non-renewal of this Agreement for any reason, the Nurse Practitioner shall only be entitled to receive the accrued but unpaid Compensation owed to her as of the date of such termination, expiration or non-renewal and she shall not be entitled to any additional compensation or payments from the PLLC.*

  (f) In the event the Nurse Practitioner's employment is terminated pursuant to Section 10 (d), the PLLC may, at its option, require the Nurse Practitioner to vacate the office of the PLLC at any time prior to the expiration of the ninety (90) day period following notice of termination.

  **11.** **Disability:** *Nurse Practitioner shall receive no compensation from the PLLC during such period of time that she is unable to render her usual and customary services on a full-time basis due to illness, disease or injury. In the event such inability to render services continues, the Agreement may be terminated by the PLLC as provided in Section 10(a) (vii).*

6. Plaintiff was employed as nurse practitioner with a contract that was valid for two years.

7. Plaintiff's contract was for a period of two years beginning August 24, 2014.

8. The Plaintiff was hired as a nurse practitioner.

9. The Plaintiff worked for the Defendant for four days

10. Plaintiffs' employment was terminated by Defendant on September 8, 2014.

11. Plaintiff's contract was terminated without a just cause contrary to the terms of the contract.

12. Defendant's termination of Plaintiff's employment contract was based on the accusation that Plaintiff failed to produce proof of medical malpractice insurance from her previous employer that specifically mentioned her as a covered person.

13. The parties never agreed that Plaintiff should produce a malpractice policy from her previous employer that specifically identified Plaintiff as covered person.

14. Since 2003, Plaintiff has been provided malpractice insurance coverage through her previous employers and Defendant was aware of this.

15. Plaintiff complied with Defendant request to provide the names of all prior employers.

16. Plaintiff also complied with Defendants request to provide the names of prior insurance companies that provided her malpractice insurance.

17. Defendant was in a position to verify the coverage but it chose not to do so.

18. Plaintiff produced evidence that she was covered as part of a group but her employment was nevertheless terminated.

19. Plaintiff di not engage in any misconduct.

20. Plaintiff did not violate any portion of the employment contract.

21. Plaintiff did not voluntarily quit the job or breach the contract in any way.

22. Plaintiff was not required to carry or produce malpractice insurance. Plaintiff did not violate any terms or conditions of her employment.

23. She was involuntarily separated from her employment by the employer.

24. The termination by Defendant constituted bad faith and the Defendant breached the contract between Ms. Mitchell and Cityscape OB/GYN PLLC.

25. The Plaintiff applied for unemployment from the New York State Department of Labor.

26. Effective September 13, 2014, the Department of Labor issued an initial determination disqualifying the claimant receiving benefits.

27. The Department of Labor made this decision on the basis that the Plaintiffs' employment was terminated due to misconduct.

28. The Defendant falsely claimed that Plaintiff's employment was terminated for misconduct.

29. The Plaintiff worked diligently during her period of employment with the Defendant.

30. The Defendant did not have any problems with Plaintiff's work or skills during her employment with Defendant.

31. The Plaintiff then requested a hearing from the Department of Labor after initial determination.

32. The Department of Labor held a hearing on the unemployment application by Plaintiff.

33. The Administrative Law Judge (ALJ) overruled the initial decision disqualifying Plaintiff from receiving benefits

34. The ALJ rendered a decision that the Plaintiff was entitled to collect benefits with respect to the fact that Plaintiff did not engage in misconduct.

35. Plaintiff made several good faith demands for the amount in controversy prior to filing this complaint.

36. The Defendant has ignored all requests to the Defendant to pay Plaintiff.

37. The Defendant did not respond to Plaintiff's request for the payment of wages and salaries that are due based upon Defendant's violations of the contract between the parties.

38. The Defendant owes Plaintiff the value of her contract with the Defendant.

## AS AND FOR A FIRST CAUSE OF ACTION

39. Paragraphs 1 through 29 are realleged as if set forth herein verbatim and incorporated by reference.

40. The Plaintiffs' economic standing was damaged by Defendants breach of contract when her employment was wrongfully terminated in violation of the employment contract between the parties.

## RELIEF

WHEREFORE, plaintiff respectfully requests the following relief: (1) Defendant pays Plaintiff $200,000.00 representing the amount that was unfairly and improperly deprived of her when defendant breached the employment contract.

Respectfully submitted,

_____
Albert Van-Lare